## Case No. 9,876.

### The MOSLEM.

[Olc. 374.] [1]

District Court, S. D. New York. July, 1846.

COSTS — ADMIRALTY — RULE — SEAMEN'S WAGES — FRIVOLOUS SUIT.

1. The prevailing party in admiralty suits is prima facie entitled to recover costs. The decree in his favor implies that he has been wrongfully delayed or prosecuted.

2. Still the common law rule to give costs in all cases to the successful suitor is not recognised in admiralty as the law of costs, and they are awarded at the sound discretion of the court, without regard to the ultimate termination of the action.

[Cited in brief in Lubker v. The A. H. Quimby, Case No. 8,586.]

3. A seaman will be denied costs in a suit for a small balance of wages due him, when payment of the balance has not been demanded of the master or owner of the ship, and no refusal to pay them has been made by either. and particularly if the seaman tacks to the debt other distinct and unsupported claims, and sues for the whole conjointly.

[Cited in The Boston, Case No. 1,672; Walsh v. The Louisiana, 4 Fed. 752.]

Upon the hearing and decision of this cause in March term last, the court ordered a reference to a commissioner to ascertain and report the precise date the libellant was imprisoned at Pernambuco the last time, in order to determine whether he rendered any services to the ship after that period. [Case No. 9,875.] The commissioner made his report pursuant to the order, and when filed, the claimants interposed exceptions to it.

E. Burr, for claimants.

A. Nash, for libellant.

PER CURIAM. The commissioner, pursuant to the order made in March upon the decision on the merits of this case, reported that the libellant was last imprisoned at Pernambuco, previous to the sailing of the ship for New-York, on the 2d day of April, 1845, and, computing his wages from that day, found the amount earned to be $33.44, and the balance due him $15.42, after all just deductions allowed against him. The claimants except to the report. and the point raised by the ex-

1 [Reported by Edward R. Olcott, Esq.]

ception relates to the time to which the commissioner carried forward and credited wages to the libellant. The court, on the final decree, regarded the libellant entitled to wages to a certain period of the voyage, and that he had disabled himself claiming wages subsequent to that; but, upon the answer of the master and the proofs before the court, it was equivocal whether the libellant, after one imprisonment in Pernambuco by the local authorities at the instance of the master, and his subsequent return to duty with a virtual condonation of the offence, and substantially under a new engagement, had been again put in confinement by order of the master; and if so, when such imprisonment took place.

It not having been a prominent consideration in the contestation of the cause, to determine precisely the termination of the libellant's imprisonment at Pernambuco, the court decreed it proper, with a view to the final disposal of the case, to refer the subject to a commissioner to report what was "the time the libellant was last imprisoned and confined at Pernambuco previous to the sailing of the ship for New-York." In this way the court hoped to ascertain, satisfactorily, whether the libellant was all the time subject to his original shipping contract, or was to be regarded connected with the ship by a new engagement at Pernambuco.

The commissioner reported that time to have been the 2d of April, 1845, and returned the evidence upon which the report was founded. It appears that the ship arrived at Pernambuco about the 24th of February, 1845, and that on the 27th, Scott and his co-libellants were imprisoned on shore, because of their refusal to assist in unlading and repairing the vessel. They remained in prison until the 11th of March, when they were taken out and returned to duty on board, agreeing to continue with the ship to the termination of the voyage. The libellant, when intoxicated, proved insubordinate and disorderly, yet in the main conducted so far satisfactorily to the officers of the ship that he was retained at his work until about the 20th of April. Having that day been guilty of gross acts of violence towards the master, he jumped overboard and swam ashore to escape arrest by the officers, and the master states, in his answer, was confined on shore by the local authorities, and was the next day brought back to the ship by his orders. Rooney, a witness for the libellant, testified that Scott was put in prison a second time, three days after that release, and was confined six days, and that he was out of prison twelve or fourteen days on duty, when he was again put in irons. There is a good deal of obscurity in the testimony respecting the order of the transactions with Scott on shore and in the ship, but I think the more credible explanation of the circumstances is, that the day after the affray, on the 2d of April, Scott was

brought back to the ship and flogged, but refusing to return to duty, he was put in irons on board, where the master and under officers endeavored to bring him to submit to their authority. The ship sailed the 6th of May, and Scott, persisting in refusing to obey orders on board, was continued in irons until his arrival in New-York. Neither the captain, in his answer, nor the second mate or steward, in their testimony, speak of the second imprisonment testified to by Rooney, nor does Rooney, the mate or steward give evidence of Scott's confinement on shore the first of April; but it is manifest, by comparing all the proofs, that the libellant was in prison ashore after his release on the 11th of March; and as it belonged to the claimants to prove that this was anterior to his being put in irons in the ship, and as this was a specific point of reference to the commissioner, I shall concur in the conclusion of the commissioner who examined this point carefully, that Scott was imprisoned in Pernambuco the day before he was put in irons on board the ship, and overrule the exception to the report on that point, and adopt the report that there is payable to the libellant the sum of $15 42 out of the wages due him on the voyage to Pernambuco.

The question of chief interest to the parties in this cause is that of costs, as they have accumulated to considerable magnitude from the course the litigation has taken. The court has already decreed costs in full to the claimants as against the co-libellants of Scott, and it remains to consider what are the equities in respect to this particular suit. The claims of costs between litigant parties, where there is usually much wrong, mingled with strong color of right on each side, more especially in actions for seamen's wages, present a class of questions of the most perplexing character, not readily settled upon any fixed principles. The common law rule of awarding costs invariably to the successful party is often marked with such manifest impropriety, not to say injustice, that courts of equitable authority reject it as a principle of decision, and assume to regard costs as one of the subjects of litigation, and dispose of them with a view to all the sound equities of the case. [Canter v. American, etc., Ins. Co.] 3 Pet. [28 U. S.] 319; 3 Hagg. 76; 1 Hagg. 83; 1 Wm. Rob. 21; Id. 124, 131, 215, 334, 447. In most of the cases cited, costs were decreed to the party prevailing in the action, and yet numerous decisions are found in the English and American admiralty reports where costs are awarded and withheld, irrespective of the result of the suit on the merits. 2 Hagg. 90; 1 Notes Cas. 305; 1 Hagg. Ecc. 210; Hutson v. Jordan [Case No. 6,959]; [Bingham v. Cabbot] 3 Dall. [3 U. S.] 34.

The court is accordingly bound, in determining the matter of costs, to weigh the relative rights and equities of the parties disclosed in the case, without being gov-

erned by the ultimate conclusion for or against either in the decision of the subject in controversy. The prevailing party is prima facie entitled to the costs of his suit or defence, the decree in his favor importing that he has been wrongfully delayed or prosecuted. This inference is, however, open in admiralty suits to be met and displaced by the general equities of the case.

This action was instituted to recover, and the libel demands wages for the entire voyage from Cape Town to New-York, and also extra wages of one dollar per day, apparently for the entire voyage, but with certainty from Cape Town to Pernambuco. The answer and claim of the master contests and denies the whole demand. It claims a forfeiture of the contract wages, because of the mutinous misconduct of the libellant, and denies the obligation of the special agreement at sea to pay wages, set up in the libel, and both parties take proofs at great length in support of their respective allegations. The court made a decree for a small part of the libellant's demand, and sustained the answer as to most of the particulars contested, and which embodied those branches of the case most strenuously litigated. The award of wages for part of the voyage was not upon the ground of the general meritorious conduct of the libellant; on the contrary, the court was constrained to declare his conduct on board during that period to have been often disorderly and mutinous, and his claim to wages was supported only because the court regarded the discipline inflicted by the master, the submission of the libellant and his after restoration to duty, as an equitable remission of the forfeiture which might otherwise have been enforced against him. Had the case accordingly presented no other question than the libellant's right to wages to Pernambuco, I am not prepared to say that the defence would not have been regarded bona fide as to that demand, and the authorities cited show that the court will not then necessarily give costs against the ship or owner, although the defence is unsuccessful.

The other features of the case, the demand for extra wages, and of contract wages for the entire voyage, compelled the owners to contest the suit, and they have clearly shown that it was unfounded and inequitable in relation to any claim beyond that of simple wages to Pernambuco, and these were saved only through an implied condonation of the offences which would have forfeited them. I think, then, it would be contrary to the usage of admiralty courts, and against the principle regulating their proceedings, to regard the small recovery of $15 42, as entitling the libellant to costs against the owners, when they have defeated claims of his mingled with it to several times that amount, and have proved his conduct in all respects from the time he undertook the voyage from Pernambuco to New-York mutinous and most injurious to their interests. Although I cannot, for these considerations, award the libellant costs, and although the proofs show his conduct to have been often turbulent and highly insubordinate, yet there are some particulars in the case evincing great hardship upon the libellant, and I am not disposed to so subject him to any decree in favor of the master or owners for costs. As to the voyage to Pernambuco, there was strong color for his belief that he had been shipped on board a vessel no way seaworthy. And his disorderly and refractory conduct in that state of mind justly claims a lenient and forbearing consideration. And in the mixed and confused events connected with his conduct, and the dealings of the master with him at Pernambuco, I am inclined to think it must be understood that the old contract between them ended with that part of the voyage, and that his return to the ship at that port was upon a new engagement for the home voyage. From that time he plainly forfeited all wages for services he might have rendered on board before the ship sailed from Pernambuco, but the severity of treatment he underwent at the time and during the voyage ought to be regarded a sufficient punishment, without having added to it a decree for costs of suit. He was kept in irons on board of the ship more than a month at Pernambuco, and from that port to New-York, without evidence to show that this was necessary for the safety of the officers, the crew or the vessel. He also proves his repeated demand of the master to be discharged at Pernambuco, and having been shipped abroad and being a foreigner, the master was under no obligation to bring him to the United States.

Upon these considerations, I decree that the owners pay the libellant, or his proctors, $15 42, the wages due on the arrival of the ship at Pernambuco, and that each party pay his own costs in this action. Costs are withheld from the libellant on the recovery of the small balance of $15 42 found to be due him, because he had never demanded payment of that sum before suit brought, nor had it been refused him by the master or owner, but more especially because he made that balance the occasion of tacking to it in this suit unwarrantable claims, and driving the parties into an expensive and protracted litigation.